UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED JACKSON,<br><br>    Plaintiff,<br><br>  v.<br><br>A. DURAN, et al.,<br><br>    Defendants. | Case No. 1:21-cv-01411-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM AND THAT PLAINTIFF'S MOTION TO APPOINT COUNSEL BE DENIED<br><br>(ECF Nos. 10, 15)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

      Plaintiff Fred Jackson is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 7, 10). Plaintiff filed his initial complaint on September 23, 2021. (ECF No. 1). He alleged claims of excessive force, deliberate indifference to his serious medical needs, and First Amendment retaliation.

      On October 22, 2021, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 9). The Court provided Plaintiff with applicable legal standards, explained why the complaint failed to state any cognizable claims, and gave Plaintiff thirty days to either file a first amended complaint or notify the Court in writing that he wanted to stand on his complaint." (*Id.* at 13). On November 24, 2021, Plaintiff filed his first amended complaint. (ECF No. 10).

The Court screened the first amended complaint on December 17, 2021, and concluded that it failed to state any cognizable claims. (ECF No. 11). The Court provided Plaintiff with applicable legal standards, explained why the complaint failed to state any cognizable claims, and gave Plaintiff thirty days to either file a second amended complaint or notify the Court in writing that he wanted to stand on his complaint. (*Id.* at 10-11).

After receiving an extension of time for the purpose of filing a second amended complaint, Plaintiff filed a notice that he wished to stand on his first amended complaint, which notice filing included a motion to appoint counsel.[1] (ECF Nos. 13, 14, 15).

For the reasons set forth below, the Court recommends that this action be dismissed for failure to state a claim and that Plaintiff's motion to appoint counsel be denied.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

I.  **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

As Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915. (ECF No. 7). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

---

[1] The Court notes that, as Plaintiff has not filed a second amended complaint, the Court will not consider any factual allegations that are not included in Plaintiff's first amended complaint.

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff filed his complaint on an amended prisoner's civil rights complaint form, specifically identifying two claims[2] and naming the following five Defendants: (1) Correctional Officer A. Duran; (2) Correctional Officer R. Rodriguez; (3) Correctional Officer A. Hernandez; (4) Warden William Joe Sullivan; and (5) Dr. U. Baniga.[3] (ECF No. 10, p. 2-3). His claims stem from events occurring at California Correctional Institution Tehachapi. (*See id.* at 3-4).

---

[2] Plaintiff's first amended complaint briefly references allegations, such as there being a "cover up" of the excessive force used, which could possibly implicate other legal claims. (ECF No. 10, p. 4). Plaintiff also did this in his initial complaint, with the Court directing him to the relevant legal standards (including for a cover-up claim) for his cursory allegations should he wish to amend his complaint. (*See* ECF No. 9, pp. 9-12). Despite having the benefit of these legal standards, Plaintiff has only listed two claims, excessive force and deliberate indifference to serious medical needs, and states that he "waives all other claims." (ECF No. 10, p. 7). Accordingly, the Court concludes that Plaintiff does not intend to raise any other claims in his first amended complaint other than those discussed in these findings and recommendations.

[3] As will be discussed later, Plaintiff discusses other persons in his complaint, mostly notably Luong Nguyen, but it is unclear whether they are mentioned for background purposes or are intended as Defendants.

Plaintiff's first claim is for "excessive force" in violation of the Eighth Amendment.[4] (*Id.* at 3). For his supporting facts, Plaintiff states that on October 3, 2020, he was playing chess when another inmate "unprovoked attack[ed]" him when he was sitting down. (*Id.*). Plaintiff is "vision impaired." (*Id.*). "Plaintiff incurred numerous permanent disabling injuries as a result of the excessive force used on him by the correctional officials named as defendants," Duran, Rodriguez, and Hernandez. (*Id.* at 3-4). Plaintiff disputes that Defendants only hit him on his leg as stated in their reports. (*Id.* at 4). As a result of the excessive force used, "Plaintiff had to undergo left shoulder surgery and is permanently disable[d] with loss of mobility and full use of his arm and fracture[d] collarbone and upper back injuries." (*Id.*).

Within his first claim, Plaintiff states that, prior to the use of excessive force, he had filed a "lead poisoning case against Warden William Joe Sullivan" and "prison staff" had stated that he "would pay a price for filing [his] complaint." (*Id.* at 3).

Plaintiff's second claim is for "deliberate indifference to serious medical needs" in violation of the Eighth Amendment. (*Id.* at 5). He alleges that Defendant Baniga is the Chief Medical Officer at his facility and is responsible for the medical care of all inmates. (*Id.*). Defendant Baniga was deliberately indifferent "to his medical needs for over 20 days after daily medical complaints to his department seeking medical care and treatment for a . . . left shoulder dislocation." (*Id.* at 6).

Plaintiff states that Luong Nguyen, who is not a named Defendant, is his primary medical care provider. (*Id.*). Nguyen "was only seeing [him] by video conference and not in person [and] failed to summon medical care immediately after the confirmation of [his] injuries on October 23, 2020 when he ignored Doctor Ren['s] order to be immediately treated by a surgeon to mitigate [his] injuries." (*Id.*). Plaintiff did not receive surgery on his left shoulder until March 9, 2021, with the resulting delay causing him "long term disability and lack of mobility." (*Id.* at 6-7).

\\\

---

[4] Minor alterations, such as omitting capitalization and correcting misspellings, have been made to quoted portions of Plaintiff's complaint for readability without indicating each specific change.

## III. ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B.    Excessive Force

Plaintiff asserts that Defendants Duran, Rodriguez, and Hernandez used excessive force following the unprovoked attack on him by a fellow inmate. (ECF No. 10, pp. 3-4). In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate. . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.

Here, Plaintiff's conclusory allegations that Defendants Duran, Rodriguez, and Hernandez used excessive force against him do not establish a constitutional violation. Plaintiff does not describe what any specific Defendant did to him. Instead, he states that "Plaintiff incurred numerous permanent disabling injuries as a result of the excessive use of force used on him by Correctional officials named as the defendants in this matter." (ECF No. 10, at pp. 3-4).

1 This alone is not enough to state a claim for excessive force in violation of the Eighth
2 Amendment based on the standards listed above. Even assuming all facts in the complaint as
3 true, the Court cannot determine that the force used was maliciously and sadistically used to
4 cause harm rather than a good-faith effort to maintain or restore discipline. Plaintiff does not
5 explain what was happening at the time of the alleged force, what Defendants said to him, how
6 he responded, what each Defendant did, and how that harmed him. For example, Plaintiff does
7 not allege that Defendants continued using force after Plaintiff stopped fighting or was
8 restrained.[5] Thus, even if the amount of force they used was more than Plaintiff believes was
9 necessary, that would not establish a violation of the Eighth Amendment.

Accordingly, Plaintiff's complaint fails to state a claim for excessive force.

### C. Deliberate Indifference to Serious Medical Needs

Plaintiff claims that Defendant Baniga failed to provide him with medical care.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b)

---

[5] The Court notes that the rules violation report that Plaintiff has provided as an exhibit to his first amended complaint states that he and the other inmate did not comply with commands to stop fighting, even after an OC grenade was deployed and O.C. pepper spray was used. (ECF No. 10, p. 53).

7

harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

Here, Plaintiff alleges that Defendant Baniga is the Chief Medical Officer responsible for the medical care of all inmates and that he was deliberately indifferent because complaints to his department regarding Plaintiff seeking medical care for his left shoulder went unanswered for a period of twenty days. (ECF No. 10, pp. 5-6). Apparently, Plaintiff seeks to hold Baniga liable in a supervisory capacity for his role as the Chief Medical Officer.

However, a plaintiff asserting a claim pursuant to § 1983 must identify how each defendant personally participated in the deprivation of his rights. *Ashcroft*, 556 U.S. at 676-77. Supervisors may be held liable only if they participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Lemire v. Cal. Dept. of Corrections & Rehabilitation*, 726 F.3d 1062, 1074–75 (9th Cir. 2013) ("A prison official in a supervisory position may be held liable under § 1983 . . . 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'") (quoting *Lolli v. Cty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)). Overt personal participation is unnecessary if the supervisory official "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted).

Here, Plaintiff identifies no factual basis to conclude that Defendant Baniga knew of a risk to Plaintiff's health and disregarded such a risk or that Baniga implemented a policy that resulted in a constitutional violation. Nor does Plaintiff state if he saw Baniga regarding his injuries, what Baniga's specific role would be in ensuring treatment for his injuries, and what

Baniga did or failed to do in connection with his medical needs.[6]

Accordingly, Plaintiff fails to state a claim for deliberate indifference.

The Court notes that, while Plaintiff names only the five Defendants listed above, the complaint lists other persons with accompanying allegations. Most notably, the complaint states that Luong Nguyen was Plaintiff's primary care provider and ignored an order from Dr. Ren to be immediately treated by a surgeon. (ECF No. 10, p. 6). However, neither Dr. Nguyen nor Dr. Ren are named as defendants in the first amended complaint.[7]

Importantly, under Federal Rule of Civil Procedure 10(a), "[t]he title of the complaint must name all the parties." "Although [a court] construe[s] pleadings liberally in their favor, pro se litigants are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). A failure "to clearly identify the persons/entities plaintiff is suing," warrants dismissal under Rule 10(a). *Rickard v. Riverside County Sheriff's Dep't*, No. 5:20-cv-00539-AB-JC, 2020 WL 5027985, at *5 (C.D. Cal. Apr. 7, 2020); *see Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), as amended (May 22, 1992) (affirming district court's dismissal of second amended complaint for failure to comply with its order to amend that complaint as required under Rule 10(a)). Here, to the extent that Plaintiff wished to bring a claim against Nguyen or Ren, they should be dismissed because they are not clearly identified as Defendants.

Alternatively, even if Plaintiff adequately identified these persons as Defendants, he has not alleged facts sufficient to state a cognizable deliberate-indifference claim, such as identifying their specific role in treating him for the injuries complained of, what specific knowledge they had concerning his injuries, and how they disregarded an excessive risk to his health.

### D.     Retaliation in Violation of the First Amendment

The Court notes that Plaintiff alleges that "prison staff" told him that he "would pay a price" for filing a civil complaint against Warden Sullivan. (ECF No. 10, p. 3).

---

[6] The Court notes that the medical records offered as exhibits to Plaintiff's complaint indicate that some medical providers, other than Defendant Baniga, treated Plaintiff for injuries stemming from his prison fight. (ECF No. 10, p. 17) (medical record from October 3, 2020 relating to "shoulder pain-swelling").
[7] Plaintiff did specifically identify Nguyen as a Defendant in his initial complaint. (ECF No. 1, p. 7).

Allegations of retaliation against a prisoner's First Amendment rights may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *accord Watson v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012). Retaliatory motive may be shown by circumstantial evidence, such as the timing of the allegedly-retaliatory act. *Bruce v. Ylst*, 351 F.3d 1283, 1288–89 (9th Cir.2003). However, "mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir.2014).

Here, Plaintiff did not allege a claim for retaliation and Plaintiff's complaint states that he "waives all other claims," presumably meaning all those claims other than the ones specifically alleged in his first amended complaint. (ECF No. 10, p. 7). However, to the extent that Plaintiff nonetheless intends to bring a retaliation claim, his allegations about unspecified "prison staff" telling him that he "would pay a price" for filing a lawsuit do not state a claim for retaliation under the First Amendment under the above standards.

### IV.    MOTION TO APPOINT COUNSEL

Plaintiff requests that, if the Court finds his "first amended complaint is inadequately articulated . . . [he] pleads with this court to appoint counsel for [him] due to the permanent injuries and disability [he] is now subjected to for life." (ECF No. 15, p. 3).

Plaintiff does not have a constitutional right to appointed counsel in this action, *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn in part on other grounds*, 154 F.3d 952 (9th Cir. 1998), and the Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). *Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the Court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). *Rand*, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, a district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id.* (citation and internal quotation marks omitted).

The Court will not recommend appointment of pro bono counsel. The Court has reviewed the record in this case and is recommending that this case be dismissed because Plaintiff has failed to state a claim. Moreover, while Plaintiff has failed to state any cognizable claim, it is not apparent that such failure is due to his inability to articulate his claims as opposed to the lack of merit in his claims. Accordingly, the Court recommends that the motion to appoint counsel be denied.

**V.   CONCLUSION, RECOMMENDATIONS, AND ORDER**

The Court has screened Plaintiff's first amended complaint and concludes that it fails to state any cognizable claims. The Court previously provided Plaintiff with applicable legal standards, explained why Plaintiff's first amended complaint failed to state a claim, and gave Plaintiff leave to file a second amended complaint, but Plaintiff chose to stand on his first amended complaint.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action be dismissed for failure to state a claim;
2. Plaintiff's motion to appoint counsel be denied (ECF No. 15); and
3. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394

(9th Cir. 1991)).

     Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:   **January 21, 2022**         /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE